(163 P.3d 361)
No. 96,136

STATE OF KANSAS, *Appellee,* v. BOBBY FRANK KRAFT, *Appellant.*

Opinion

filed July 27, 2007.

*Patrick H. Dunn,* of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier,* assistant district attorney, *Paul Morrison,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before MARQUARDT, P.J., GREEN and CAPLINGER, JJ.

CAPLINGER, J.: Bobby Frank Kraft appeals from the district court's denial of his motion to withdraw his plea to aggravated escape. Kraft claims that because he was on "house arrest" at the time he absconded, he was not in "lawful custody" pursuant to K.S.A. 2004 Supp. 21-3810(a)(1). Therefore, Kraft argues the factual basis provided to the district court was insufficient to support his plea and the district court abused its discretion in denying his motion. Kraft also alleges the district court failed to consider his ability to pay attorney fees on the record at sentencing.

### *Factual and procedural background*

At the plea hearing, the State recited the following factual basis for Kraft's plea to aggravated escape from custody:

"Judge, evidence would be on January 4th, 2005, at the Johnson County Residential Center in Johnson County, Kansas, the defendant, Bobby Frank Kraft, was allowed to leave. He was being held there on conviction for attempted robbery on Johnson County case 02CR1106. As terms of his probation, the defendant was allowed to go to his residence in Kansas City, Kansas. Corrections personnel were unable to locate him. He was declared absent without leave when he failed to return to the Center."

Following this recitation, Kraft's trial counsel agreed that the State had proffered a factual basis sufficient to permit a jury to convict Kraft of aggravated escape, and Kraft affirmed that the State's factual proffer was accurate. After Kraft affirmed that he entered the plea of his own free will, the court found Kraft guilty of attempted aggravated escape from custody.

Prior to sentencing, Kraft filed motions to withdraw his plea and to dismiss the complaint. Kraft asserted good cause existed to withdraw his plea because (1) his attorney erred in explaining the charges to him and in concluding he was in lawful custody at the time he absconded; and (2) Kraft would not have pled guilty to a crime he could not have committed.

Following a hearing, the district court ruled Kraft was in lawful custody at the time he absconded and, therefore, had not shown good cause to withdraw his plea.

The district court then imposed the sentence recommended in the plea agreement, a mid-range sentence of 6 months. The court noted that although Kraft's criminal history score and the crime severity level resulted in presumptive probation, a special rule applied requiring incarceration. See K.S.A. 2004 Supp. 21-4603d(f).

On appeal, Kraft argues the district court abused its discretion by denying his motion to withdraw his plea. Kraft reasserts his argument that he was not in lawful custody at the time he absconded, and therefore he could not be charged with aggravated escape. Additionally, Kraft claims his attorney was ineffective because he erroneously concluded Kraft was in "lawful custody," which prevented Kraft from making a knowing and intelligent plea.

The primary issue on appeal is whether the district court correctly concluded Kraft was in "lawful custody" when he absconded while on house arrest. If so, we must affirm the district court's conclusion that Kraft failed to show good cause to withdraw his plea. If Kraft was not in lawful custody, then the district court reached its conclusion based on a faulty legal conclusion and must be reversed. See *Griffin v. Suzuki Motor Corp.*, 280 Kan. 447, 452, 124 P.3d 57 (2005) (" 'A district court by definition abuses its discretion when it makes an error of law.' ").

*Standard of review*

Prior to sentencing, a guilty plea may be withdrawn "for good cause shown and within the discretion of the court." K.S.A. 2004 Supp. 22-3210(d); *State v. Harned*, 281 Kan. 1023, 1042, 135 P.3d 1169 (2006). " 'The decision to deny a motion to withdraw a plea lies within the sound discretion of the trial court, and the court's decision will not be disturbed on appeal absent a showing that the court abused that discretion.' [Citation omitted.]" 281 Kan. at 1042. A district court abuses its discretion when no reasonable person would adopt the view of the district court or if its "decision goes outside the [legal] framework of or fails to properly consider

statutory limitations or legal standards." *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006).

In evaluating whether good cause has been shown, the district court should consider three factors: " '(1) [whether] the defendant was represented by competent counsel, (2) [whether] the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) [whether] the plea was fairly and understandingly made. [Citation omitted.]' [Citation omitted.]" 281 Kan. at 36. Kraft claims he established all three factors here.

To the extent that the resolution of the issue requires interpretation of K.S.A. 2004 Supp. 21-3809 and K.S.A. 2004 Supp. 21-3810, this court's review is unlimited. See *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006). The fundamental rule of statutory construction is to ascertain the legislature's intent. The legislature is presumed to have expressed its intent through the language of the statute. 281 Kan. at 159. When a statute is plain and unambiguous, the court must give effect to the legislature's intent as expressed rather than determining what the law should or should not be. 281 Kan. at 159.

### *Did Kraft escape while in "lawful custody"?*

"Aggravated escape from custody is: (a) Escaping while held in lawful custody (1) upon a charge or conviction of a felony." K.S.A. 2004 Supp. 21-3810(a)(1). As used in K.S.A. 2004 Supp. 21-3810, "custody" and "escape" are defined in K.S.A. 2004 Supp. 21-3809(b):

"(1) 'Custody' means arrest; detention in a facility for holding persons charged with or convicted of crimes . . . ; *detention in a hospital or other facility pursuant to court order, imposed as a specific condition of probation or parole or imposed as a specific condition of assignment to a community correctional services program; . . . or any other detention for law enforcement purposes.* 'Custody' does not include general supervision of a person on probation or parole or constraint incidental to release on bail.

"(2) 'Escape' means departure from custody without lawful authority or failure to return to custody following temporary leave lawfully granted pursuant to express authorization of law or order of a court." (Emphasis added.)

The parties do not dispute that Kraft was ordered to attend the Johnson County Community Corrections Residential Center (Cen-

ter) as a condition of probation for his conviction of attempted robbery, and that as long as Kraft resided at the Center, he was in lawful custody.

Rather, Kraft argues that because he had been placed on house arrest, he was no longer in lawful custody. In support of this argument, Kraft suggests that "custody" or "actual or constructive control" is characterized by the defendant's place of residence, and as long as the State required him to reside at a community correctional facility, he was within the State's custody. However, Kraft contends that once he was released and placed on house arrest, he was not expected to return to the facility to stay. At that point, Kraft claims he was under general supervision and within the statutory exception which provides that custody "does not include general supervision of a person on probation." K.S.A. 2004 Supp. 21-3809(b)(1).

The State, on the other hand, suggests custody is defined by whether prison officials evidenced an intent to abandon or give up their prisoner, leaving the prisoner free to go on his or her way. Additionally, the State avers that Kraft was restrained by a court order directing him to complete the program and, thus, was detained pursuant to the specific language of the statute.

The district court noted the lack of authority on the particular issue raised here, but concluded the term "custody" should be broadly interpreted based upon the plain language of the statute, which defines "lawful custody" to include " 'any other detention for law enforcement purposes.' " K.S.A. 2004 Supp. 21-3809(b)(1). In ruling that Kraft was in lawful custody at the time he absconded and, therefore, had not shown good cause to withdraw his plea, the district court concluded that custody is determined by the level of control exerted by corrections officers and the level of freedom permitted Kraft.

Like the district court, we are aware of no Kansas case law specifically considering whether an individual who has been assigned to a residential treatment center and then conditionally released to house arrest is considered to be within "lawful custody" pursuant to K.S.A. 2004 Supp. 21-3810(a)(1). However, we believe the district court's interpretation of the phrase "lawful custody" is gen-

erally consistent with Kansas precedent, which looks to the State's level of control when determining whether a defendant is within "lawful custody."

For instance, in *State v. Pritchett*, 222 Kan. 719, 720, 567 P.2d 886 (1977), the court considered whether a juvenile defendant was in lawful custody when he left a hospital at a time when no state officials were present. In analyzing the phrase "lawful custody" within the meaning of the aggravated juvenile delinquency statute (since repealed in 1996), the court considered several state and federal cases and ultimately concluded Pritchett was in custody because State officials had not evidenced an intent to let him go. The court aptly reasoned:

"The common thread which runs through these cases is the idea that custody contemplates an intent on the part of prison officials to exercise actual or constructive control of the prisoner and that in some manner the prisoner's liberty is restrained. [Citation omitted.] There is no requirement that the prisoner be constantly supervised or watched over by prison officials. [Citation omitted.] The key factor is that prison officials have not evidenced an intent to abandon or give up their prisoner, leaving him free to go on his way." 222 Kan. at 720.

See also *State v. Briggs*, 30 Kan. App. 2d 807, 811, 48 P.3d 686, *rev. denied* 274 Kan. 1114 (2002) (defendant was in lawful custody when he fled the courthouse while awaiting officer to accompany him); *State v. Pichon*, 15 Kan. App. 2d 527, 537-38, 811 P.2d 517, *rev. denied* 249 Kan. 778 (1991) (defendant was in lawful custody on excursion to local community center when defendant fled from a threat and failed to turn himself in after threat passed).

In finding the defendant was in lawful custody in this case, the district court relied upon the principles articulated in *State v. Garrett*, 235 Kan. 768, 684 P.2d 413 (1984). There, the State appealed after the district court dismissed Garrett's aggravated escape from custody charges. 235 Kan. at 771. Garrett had been required to reside at a community corrections center as part of the terms of his probation. Garrett signed a document acknowledging that if he failed to return to his designated housing at the designated time, he could be found guilty of escape. 235 Kan. at 769.

Garrett checked out of the center on a job-seeking furlough but failed to return at the time directed. Instead, Garrett traveled to

another city to visit relatives and did not return until later that evening. After Garrett was charged with aggravated escape from custody, he moved to dismiss the charge, asserting he had not escaped "lawful custody" within the meaning of the statute. *Garrett*, 235 Kan. at 770-71. The district court dismissed the complaint on constitutional grounds, although Garrett had not asserted a constitutional defense. 235 Kan. at 771.

On appeal, our Supreme Court addressed whether the statutes cited were unconstitutionally vague and whether the offense of aggravated escape from custody applied to a convicted felon who, without permission and in violation of the rules, leaves a community corrections program. After citing the statutory language, the court discussed *Pritchett* and its analysis of several federal and state escape cases. 235 Kan. at 771-72. The court concluded that because Garrett "was being detained in a facility for holding persons convicted of crimes and was also being detained pursuant to court order," he was in custody within the meaning of the statute. 235 Kan. at 774.

Here, like Garrett, Kraft was in custody because he was being detained in a facility pursuant to court order. As defined by K.S.A. 2004 Supp. 21-3809(b)(1), custody includes "detention in a hospital or other facility pursuant to court order, imposed as a specific condition of probation or parole or imposed as a specific condition of assignment to a community correctional services program." Kraft was ordered to complete the Johnson County Community Corrections Residential Center *program* as a condition of his probation. Thus, although Kraft was no longer residing at the Center, he was in the custody of the Center until he was released from the program.

This conclusion is supported by the testimony of Amy Zetmeir, a residential supervision officer (RSO) for the Center. Zetmeir characterized the center's release program as a "high form of supervised probation." According to Zetmeir, the district court assigns probationers to the program, which consists of an initial stay of approximately 120 days followed by two phases of conditional release, each lasting approximately 2 weeks. During these two

phases, the probationer is transitioned from the "facility into their house or wherever they will be living again."

According to Zetmeir, before the first phase begins, the probationer, the RSO, and the intensive supervision officer (ISO) conduct a home visit and review the job and transportation plans to ensure the plans are satisfactory. After the plans are approved, the probationer is placed on house arrest for 2 weeks and supervised by a house arrest officer. Significantly, Zetmeir testified that during this first phase, the "client is still under supervision as a residential client." During this time, the probationer receives "day for day" credit toward his or her sentence, and the probationer's movements are continuously monitored. The probationer reports at least twice a week to his or her RSO and once a week to his or her house arrest officer.

Zetmeir further explained that if the probationer does not experience any problems in the first 2 weeks, the probationer enters the second phase, in which the RSO releases the probationer to ISO supervision for an additional 2 weeks. Until the RSO and the probationer sign the release form, however, the probationer continues in the program and the probationer is not under the general supervision of the ISO. As long as no problems occur during the entire 4-week period, the RSO fully releases the probationer to the ISO and removes the probationer from house arrest.

However, Zetmeir testified that if a probationer violates a probation term during the first release phase, the probationer typically is returned to the Center.

Zetmeir testified that Kraft signed out of the residential facility on January 4, 2005, and failed to return to the center for a scheduled appointment on January 12, 2005, with Zetmeir and Kraft's house arrest supervisor. In fact, according to Zetmeir, Kraft never really began the first conditional release phase, as "[h]e picked up his [monitoring] equipment but never made it home with the equipment to set it up."

It is undisputed that Kraft did not complete the first release phase and never was released to the supervision of the ISO. Because Kraft had not been released to the custody of his ISO, he was still under the control of the residential center, a community

corrections program Kraft was ordered to complete as a condition of his probation. Based on these facts, we find the program officials had not evidenced an intent to abandon or give up Kraft, nor was he free to go on his way. Thus, we hold Kraft was in lawful custody within the meaning of the statute, and the district court did not abuse its discretion in finding Kraft did not show good cause to withdraw his plea.

*Did the district court err in denying Kraft's motion to dismiss?*

Kraft also appeals from the district court's denial of his motion to dismiss. However, Kraft failed to brief this issue. Issues not briefed on appeal are considered abandoned or waived and will not be addressed by the court. *State v. Holmes,* 278 Kan. 603, 622, 102 P.3d 406 (2004). Accordingly, we find Kraft abandoned this issue.

*BIDS fees*

Kraft next argues the district court erred in ordering him to reimburse the Board of Indigents' Defense Services (BIDS) fees because it failed to consider on the record at sentencing his ability to pay the fees or the financial burden payment of the fees would impose upon him.

At sentencing, the district court did not impose BIDS fees. However, the journal entry of sentencing imposed BIDS fees, but did not specify the amount of the fees. Kraft argues the court failed to inquire into his financial ability to pay the fees as required by K.S.A. 2004 Supp. 22-4513 and *State v. Robinson,* 281 Kan. 538, 132 P.3d 934 (2006). We agree and reverse the district court's imposition of BIDS fees and remand for resentencing with directions to the sentencing court to comply with K.S.A. 2004 Supp. 22-4513.

Affirmed in part, reversed in part, and remanded with directions.