NOT DESIGNATED FOR PUBLICATION

No. 111,864

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHARLES REPPLE STEVENSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed September 4, 2015. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Paul E. Brothers*, legal intern, *Stephen M. Howe*, district attorney, *Steven J. Obermeier*, senior deputy district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., HILL, J., and TIMOTHY G. LAHEY, District Judge, assigned.

*Per Curiam:* We affirm the conviction of Charles Repple Stevenson for aggravated escape from custody because there is ample evidence in the record for a rational factfinder to find him guilty beyond a reasonable doubt.

1

*While serving an intensively supervised probation period, Stevenson lived at a residential center.*

Stevenson entered the Johnson County Residential Center in late August 2012. The court required that he live there for 12 months as one of the conditions of his sentence he had received for possession of methamphetamine. Upon his arrival at the Residential Center, Stevenson's intensive supervision officer, Dana Flores, reviewed the Residential Center Agreement that outlined the rules Stevenson would be subject to while residing there. Notably, some of the rules initialed by Stevenson in that Agreement included:

> "9. Clients are to be at their designated place of assignment. Clients are to keep themselves available for periodic phone and field checks by staff and, while away from the facility, must check in as directed. Clients who fail to return to the Center *or are not at their place of assignment* may be guilty of escape or aggravated escape under the Kansas Statutes.

> "10. Clients shall not leave the housing unit without prior staff approval.
> a. Clients are required to sign in and out of their assigned building and shall notify the on-duty staff when going to another assigned area.
> b. If leaving the facility, clients must sign out one hour prior to their departure time. When the client arrives back to his/her housing unit he/she must immediately sign back in on his/her sign in/out sheet." (Emphasis added.)

Stevenson also signed a Residential Center Work Agreement, which outlined his obligations to seek employment and closely governed how he was to come and go from the Residential Center to an assigned job site and what he could or could not do during his assigned employment.

Beginning in late September 2012, Stevenson regularly signed in and out of the Residential Center and took an assigned van to go to his work placement at Kentucky Fried Chicken. The Residential Center program required Stevenson to maintain a job.

Stevenson signed out of the Residential Center on November 3, 2012, to go to work at KFC. Stevenson failed to meet the van and return to the Residential Center at 1 a.m. the next morning. At no time did Stevenson call in to report any change in his work schedule or missed transportation. After the Residential Center's regular procedures for locating missing inmates did not reveal Stevenson's whereabouts, Flores filed an affidavit with the district attorney to initiate the escape charge.

The court instructed the jury that the State had to prove:

"1.      The defendant was being held in custody on a conviction of a felony.
"2.      *The defendant departed from custody without lawful authority.*
"3.      The defendant did so intentionally, knowingly, or recklessly.
"4.      This act occurred on or about the 4th day of November, 2012 in Johnson County, Kansas.

. . . .

"For purposes of the crime of aggravated escape from custody, a person is in 'custody', when he/she is lawfully placed in a residential facility." (Emphasis added.)

After he was found guilty, Stevenson moved for an acquittal, arguing the State proved only that he failed to return to custody following temporary leave that was lawfully granted, which was not the escape charge on which the court instructed the jury. Noting that Stevenson did not object to the jury instruction under which he was found guilty, the State responded that Stevenson never left the lawful "custody" of the DOC when he was assigned to work at KFC. And he obviously departed from that custody without lawful authority by not being in his place of assignment, *i.e.*, when he failed to show up for his transportation to return to the Residential Center early that morning.

3

The district court ultimately agreed with the State and denied Stevenson's motion for acquittal. The court sentenced Stevenson to a downward durational departure sentence of 10 months' imprisonment.

*The State presented sufficient evidence to convict.*

In his sole issue on appeal, Stevenson challenges the sufficiency of the evidence to support the theory of aggravated escape from custody on which the court instructed the jury. The State responds that a rational factfinder could fairly conclude Stevenson committed aggravated escape from custody when he left the Residential Center and never returned.

In reviewing a challenge to the sufficiency of the evidence to sustain a criminal conviction, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Frye*, 294 Kan. 364, 374-75, 277 P.3d 1091 (2012). We will not reweigh the evidence, assess credibility, or resolve conflicts in the evidence. *State v. Hall*, 292 Kan. 841, 859, 257 P.3d 272 (2011). A jury can find a defendant guilty based on circumstantial evidence as long as such evidence provides a basis from which the factfinder may reasonably infer the existence of the fact in issue. But such evidence need not exclude every other reasonable conclusion or inference to sustain a conviction. *State v. Scaife*, 286 Kan. 614, 618, 186 P.3d 755 (2008).

Stevenson asks us to rule that when he left the Residential Center he was on temporary leave from custody. According to Stevenson, to hold otherwise would essentially render that portion of the statute concerning "temporary leave lawfully granted pursuant to express authorization of law or order of a court" superfluous. See K.S.A. 2014 Supp. 21-5911(d)(2). Thus, he contends that we should reverse his conviction.

4

Stevenson was convicted of aggravated escape from custody in violation of K.S.A. 2014 Supp. 21-5911(b)(1)(A), which defines the crime as: "(1) Escaping while held in custody: (A) Upon a . . . conviction of . . . a felony." Stevenson has never disputed that he was in custody while he was at the Residential Center. His argument centers on the following definition of "escape" also found in the statute:

> "'escape' means departure from custody without lawful authority or failure to return to custody following temporary leave lawfully granted pursuant to express authorization of law or order of a court." K.S.A. 2014 Supp. 21-5911(d)(2).

We agree with the district court and reject Stevenson's argument. Just because Stevenson was not at the Residential Center while he was working at KFC, that does not mean the State's strings were not still attached to him. The legal definitions of "custody" and "escape" have remained essentially unchanged. Compare K.S.A. 2004 Supp. 21-3810(a)(1) with K.S.A. 2014 Supp. 21-5911(d).

We look to prior decisions that have applied these terms to various factual scenarios—particularly what it means to remain in "lawful custody" when in a setting similar to the Residential Center. Our Supreme Court held that a juvenile was in lawful custody when he left a hospital at a time when no state officials were around and stated intent to let the prisoner free is necessary:

> "'[C]ustody contemplates an intent on the part of prison officials to exercise actual or constructive control of the prisoner and that in some manner the prisoner's liberty is restrained. [Citation omitted.] There is no requirement that the prisoner be constantly supervised or watched over by prison officials. [Citation omitted.] The key factor is that prison officials have not evidenced an intent to abandon or give up their prisoner, leaving him free to go on his way.' [Citation omitted.]" *State v. Kraft*, 38 Kan. App. 2d 215, 220, 163 P.3d 361 (quoting *State v. Pritchett*, 222 Kan. 719, 720, 567 P.2d 886 [1977]), *rev. denied* 285 Kan 1176 (2007).

5

In *Kraft*, 38 Kan. App. 2d at 220-23, this court applied this sound reasoning to hold the defendant was still in "lawful custody" after he left the Residential Center and was placed on house arrest. More analogous to this case, in *State v. Garrett*, 235 Kan. 768, 769-74, 684 P.2d 413 (1984), our Supreme Court applied this same reasoning to hold a defendant was still in "lawful custody" when he checked out of the community corrections center to search for a job and failed to return at the time directed, instead choosing to visit relatives before returning later that evening.

We see very little difference between the facts of this case and *Garrett*. Stevenson remained in the custody of the Residential Center when he signed out and left to go to work at KFC. Thus, based on the evidence we have reviewed above, a rational jury could have found Stevenson guilty beyond a reasonable doubt of aggravated escape from custody.

Affirmed.