NOT DESIGNATED FOR PUBLICATION

No. 121,739

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL LAWRENCE BASKA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed July 31, 2020. Reversed and remanded with directions.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., HILL and ATCHESON, JJ.

STANDRIDGE, J.: Michael Lawrence Baska appeals from the district court's order requiring him to serve the 356 days left on his postimprisonment supervision in jail, arguing it amounts to an illegal sentence. For the reasons stated below, we agree. Accordingly, we reverse the order revoking Baska's postimprisonment supervision and remand the matter with directions for the court to decide whether Baska is otherwise subject to imprisonment and, if not, to impose the mandatory one-year period of postimprisonment supervision as originally ordered.

1

On June 2, 2016, Baska was arrested and charged with one count felony driving under the influence (DUI) of alcohol and one count misdemeanor driving without an ignition interlock device. Relevant here, the State later amended the complaint to add a misdemeanor charge of transporting an open container.

At the time he was arrested, Baska was serving a period of postimprisonment supervision under K.S.A. 2013 Supp. 8-1567 for a previous DUI conviction. At the time, K.S.A. 2013 Supp. 8-1567(b)(3) stated, in relevant part:

> "After the term of imprisonment imposed by the court, the person shall be placed on supervision to community correctional services or court services, as determined by the court, for a mandatory one-year period of supervision, which such period of supervision shall not be reduced. . . . Any violation of the conditions of such supervision may subject such person to revocation of supervision and imprisonment in jail for the remainder of the period of imprisonment, the remainder of the supervision period, or any combination or portion thereof."

Prior versions of K.S.A. 8-1567 required felony DUI offenders to be placed on postrelease supervision in the custody of the Secretary of Corrections after they completed the imprisonment portion of their sentence. But in 2011, the Kansas Legislature eliminated this requirement and replaced it with the current provisions mandating postimprisonment supervision. L. 2011, ch. 105, § 19. Because the Legislature eliminated the provision requiring postrelease supervision for those convicted of felony DUI, we necessarily presume the current version of the statute requires a distinct form of supervision. See *State v. Castillo*, 54 Kan. App. 2d 217, 227, 397 P.3d 1248 (2017) (Postimprisonment supervision for a DUI conviction is akin to probation and is a sentence separate and distinct from that of postrelease supervision.). Under the statute, the district court has discretion to revoke postimprisonment supervision and to impose

additional jail time where the defendant is found to have violated the conditions of supervision. 54 Kan. App. 2d at 227.

After his arrest in this case, the district court found Baska had violated the conditions of his postimprisonment supervision in the earlier case, revoked his supervision, and ordered him to serve the balance of his supervision period in county jail.

On November 3, 2017, Baska pleaded guilty in this case to felony DUI, misdemeanor driving without an ignition interlock device, and misdemeanor transporting an open container. The court held a sentencing hearing on January 3, 2018, and imposed the following sentences:

Felony DUI, fourth

- The court imposed a 12-month (360 days) jail sentence but noted that Baska was entitled to 459 days of jail time credit so the court deemed the jail time served.
- The court imposed the mandatory one-year period of postimprisonment supervision.
  - The parties agreed the postimprisonment supervision would start when Baska was released from the Residential Center Probation Program, which was part of his sentence for both of the misdemeanor convictions as described below.

Misdemeanor driving without ignition interlock device

- The court imposed a 12-month jail sentence, consecutive to the felony DUI sentence, but granted Baska 24 months' probation under the supervision of community corrections.

3

- o The court ordered the initial probation placement to be served at the Therapeutic Community within the Residential Center Probation Program;
- o The court ordered Baska to transition to the Residential Center Probation Program when he was released from the Therapeutic Community; and
- o The court ordered that, upon release from the Residential Center, Baska would be required to wear a remote breath unit for 90 days.

Misdemeanor transporting open container

- The court imposed a 6-month jail sentence, consecutive to the sentence for driving without an ignition interlock device and the sentence for felony DUI but granted Baska 24 months' probation under the supervision of community corrections.
  - o The court ordered the initial probation placement to be served at the Therapeutic Community within the Residential Center Probation Program;
  - o The court ordered Baska to transition to the Residential Center Probation Program when he was released from the Therapeutic Community; and
  - o The court ordered that, upon release from the Residential Center Probation Program, Baska would be required to wear a remote breath unit for 90 days.

To summarize, the district court sentenced Baska to 18 months in jail on the two misdemeanors but granted him probation with very specific terms and conditions with which he had to comply. In order to understand those terms and conditions, a few definitions are helpful. The court ordered the initial probation placement to be served at the Therapeutic Community and, when released, to transition to the Residential Center

4

Probation Program. According to its website, the Residential Center is administered by the Johnson County Department of Corrections and "is a 398 bed, community based, facility that provides a highly structured environment for adult offenders ordered by the District Court to [the] program. The main objective of the Residential Center program is to reintegrate clients into the community as successful, productive citizens." See Johnson County Kansas Department of Corrections:  Adult Residential Center Probation Program, https://www.jocogov.org/dept/corrections/adult-services/adult-residential-center-probation-program (last visited June 5, 2020). The Therapeutic Community is a six-month drug treatment program housed within the Residential Center and "is designed for offenders who have extensive drug abuse and criminal histories." Johnson County Kansas Department of Corrections:  Therapeutic Community, https://www.jocogov.org/dept/corrections/adult-services/therapeutic-community (last visited June 5, 2020).

It appears from the record that Baska successfully completed his six-month drug treatment program in the Therapeutic Community on September 20, 2018, and was moved to the Residential Center Probation Program. Baska allegedly violated the terms of his probation by failing drug tests on November 28, 2018, and December 5, 2018, while in the Residential Center. Baska was arrested on December 28, 2018, at the Residential Center and taken to jail. The State filed a motion to revoke probation.

On December 31, 2018, the district court held a hearing on the motion to revoke probation. Baska, who was still in custody in the jail, appeared pro se at the hearing and denied the allegations that he violated the conditions of his probation. The court appointed the public defender and ordered Baska to personally appear at the next court hearing. The court set bond at $50,000, cash or surety, prohibited Baska from the use of illegal drugs or controlled substances, ordered him to submit to drug testing when directed by the court, and ordered Baska confined to house arrest.

On March 29, 2019, Baska was arrested for bond violations based on his submission of diluted drug test samples on three different occasions. The motion to revoke probation was still pending, but the State filed a motion to revoke bond. The district court permitted Baska to bond out a second time.

On April 24, 2019, Baska was arrested for bond violations based on his attempt to falsify a drug test on April 19, 2019. The State filed its second motion to revoke bond. The district court permitted Baska to bond out a third time.

On May 15, 2019, Baska failed a drug test. A week later, the State filed an amended motion to revoke Baska's probation, changing the grounds from Baska's failed drug tests in late 2018 to Baska's attempt to falsify his drug test on April 19, 2019, and his failed drug test on May 15, 2019.

On May 30, 2019, the district court held a probation revocation hearing on the State's May 22, 2019 motion. Baska stipulated to violating the terms and conditions of his probation by attempting to falsify a drug test on April 19, 2019, and to failing a drug test on May 15, 2019. The district court revoked Baska's probation in the two misdemeanor cases and ordered him to serve the remaining 149 days of his underlying sentences for misdemeanor driving without an ignition interlock device and misdemeanor transporting an open container. The court also revoked Baska's postimprisonment supervision and ordered Baska to serve the 356-day balance of time remaining on that period in the county jail.

ANALYSIS

Baska argues that the district court imposed an illegal sentence when it ordered him to serve almost the entirety of his postimprisonment supervision period in jail. Although he failed to raise this claim before the district court, an illegal sentence can be

6

corrected at any time, even for the first time on appeal. See *State v. Kelly*, 298 Kan. 965, 975, 318 P.3d 987 (2014).

An illegal sentence is any sentence that is "[i]mposed by a court without jurisdiction; that does not conform to the applicable statutory provision, either in character or punishment; or that is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced." K.S.A. 2019 Supp. 22-3504(c)(1). Whether a sentence is illegal within the meaning of K.S.A. 2019 Supp. 22-3504(c)(1) is a question of law over which appellate courts exercise unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016).

Baska makes four alternative arguments, all of which claim that his sentence is illegal because it fails to conform to the applicable statutory provision, which in this case is K.S.A. 8-1567(b)(3). Before reaching the merits of Baska's arguments, however, we first must decide which version of the statute applies to the claims presented on appeal.

Baska was arrested on June 2, 2016, and sentenced on January 3, 2018. Both at the time he was arrested and at the time he was sentenced, the statutory provision setting forth the postimprisonment supervision period that applies to an offender's third and subsequent DUI conviction stated, in relevant part, as follows:

> "The court shall determine whether the offender, upon release from imprisonment, shall
> be supervised by community correctional services or court services based upon the risk
> and needs of the offender. The risk and needs of the offender shall be determined by use
> of a risk assessment tool specified by the Kansas sentencing commission. The law
> enforcement agency maintaining custody and control of a defendant for imprisonment
> shall cause a certified copy of the judgment form or journal entry to be sent to the
> supervision office designated by the court. After the term of imprisonment imposed by
> the court, the person shall be placed on supervision to community correctional services or
> court services, as determined by the court, for a mandatory one-year period of

7

supervision, which such period of supervision shall not be reduced. During such supervision, the person shall be required to participate in a multidisciplinary model of services for substance use disorders facilitated by a Kansas department for aging and disability services designated care coordination agency to include assessment and, if appropriate, referral to a community based substance use disorder treatment including recovery management and mental health counseling as needed. The multidisciplinary team shall include the designated care coordination agency, the supervision officer, the Kansas department for aging and disability services designated treatment provider and the offender. Any violation of the conditions of such supervision may subject such person to revocation of supervision and imprisonment in jail for the remainder of the period of imprisonment, the remainder of the supervision period, or any combination or portion thereof." K.S.A. 2015 Supp. 8-1567(b)(3).

In his appellate brief, however, Baska cites to the current version of K.S.A. 8-1567(b)(3), which includes additional language that became effective on July 1, 2018. And, although the State appears to cite to the 2015 version of the statute, the specific language it quotes is from the 2018 amended statute. The new language states as follows:

"An offender for whom a warrant has been issued by the court alleging a violation of this supervision shall be considered a fugitive from justice if it is found that the warrant cannot be served. If it is found the offender has violated the provisions of this supervision, the court shall determine whether the time from the issuing of the warrant to the date of the court's determination of an alleged violation, or any part of it, shall be counted as time served on supervision. . . . The term of supervision may be extended at the court's discretion beyond one year, and any violation of the conditions of such extended term of supervision may subject such person to the revocation of supervision and imprisonment in jail of up to the remainder of the original sentence, not the term of the extended supervision." L. 2018, ch. 106, § 13.

Although both parties rely on the language in the 2018 amended statute, neither party explains in their briefs why the amendments should apply retroactively to Baska's case. An argument not briefed is generally deemed waived and abandoned. *State v.*

8

*Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015). In any case, we cannot apply the 2018 amendments retroactively. The general rule is that a statute operates prospectively unless (1) the statutory language clearly indicates the Legislature intended the statute to operate retrospectively or (2) the change is procedural or remedial in nature. *State v. Bernhardt*, 304 Kan. 460, 479, 372 P.3d 1161 (2016). Here, the 2018 amendments do not direct courts to apply the change retroactively. See K.S.A. 8-1567, as amended by L. 2018, ch. 106, § 13. And the amendments are not merely procedural since they permit the court to extend the term of postimprisonment supervision beyond one year. See *Bernhardt*, 304 Kan. at 480 (explaining that "[a] merely procedural law does not 'change[] the legal consequences of acts completed before its effective date'"). For these reasons, we apply the version of K.S.A. 8-1567 in effect when Baska was sentenced on January 3, 2018, to the claims presented by Baska on appeal.

Having determined that K.S.A. 2015 Supp. 8-1567 applies to the claims presented on appeal, we move on to address each of the four alternative arguments made by Baska claiming his sentence is illegal for failing to conform to that statute.

1. *Expiration of the term of imprisonment*

Under K.S.A. 2015 Supp. 8-1567(b)(3), a felony DUI offender must be placed on a one-year mandatory period of supervision "[a]fter the term of imprisonment imposed by the court." The statute also states that placement on this one-year mandatory period of supervision must occur "upon release from imprisonment" and upon "expiration of the term of imprisonment."

For purposes of this particular claim, Baska argues he was released from imprisonment on January 3, 2018, when the court deemed the 459 days he already had spent in jail as time served on the 12-month jail sentence he received for the felony DUI conviction. Based on this argument, Baska asserts his period of postimprisonment

9

supervision ended on January 3, 2019, which necessarily rendered the district court's original sentencing order and its revocation order illegal because neither conformed to the provisions of K.S.A. 2015 Supp. 8-1567(b)(3). The former because it improperly delayed the start of Baska's postimprisonment supervision period and the latter because it revoked Baska's postimprisonment supervision after it already had expired.

We are not persuaded by Baska's argument. In this case, Baska was convicted and sentenced on three separate counts. On the two misdemeanor counts, the district court placed Baska on 24 months' probation. As a condition of probation, the court required Baska to attend the Therapeutic Community, an inpatient rehabilitation program and, after completing that program, to reside at the Residential Center. On the felony DUI count, the court ordered Baska to time served on the prison sentence and imposed the mandatory period of one-year postimprisonment supervision, to be completed once Baska was released from the Residential Center.

K.S.A. 2015 Supp. 8-1567(b)(3) states that "upon expiration of the term of imprisonment" a felony DUI offender must be delivered and shall be placed on the mandatory one-year supervision "[a]fter the term of imprisonment imposed by the court." Under K.S.A. 2015 Supp. 8-1567(o)(2), the term "imprisonment" is defined as "any restrained environment in which the court and law enforcement agency intend to retain custody and control of a defendant." Under the statutory definition, we conclude Baska was imprisoned during the entire time he was serving his probation sentence at the Therapeutic Community and later at the Residential Center because he was in a restrained environment under the custody and control of the Johnson County Department of Corrections, a law enforcement agency. Our conclusion that Baska was imprisoned during these periods is supported by the fact that he received jail credit for the time he spent at the Therapeutic Community and at the Residential Center. See K.S.A. 2019 Supp. 21-6615 (jail time credit is granted for time spent in a residential facility or a community correctional residential services program).

But it appears Baska might be arguing that an offender may begin serving postimprisonment supervision on a felony DUI conviction while still serving the imprisonment portion of a sentence on another conviction in the same case. A similar argument was submitted to the court in *State v. Martinez*, No. 117,875, 2018 WL 4039405 (Kan. App. 2018) (unpublished opinion). In *Martinez*, the offender was convicted of felony DUI in four different cases. The question presented on appeal was whether a DUI offender may begin serving postimprisonment supervision in one case while serving an imprisonment portion of a sentence in another case.

"[Martinez] asserts that because the statute provides that the term of post-imprisonment supervision begins '[a]fter the term of imprisonment' rather than beginning after all consecutive sentences imposed by the court have been served, a DUI offender may be on post-imprisonment supervision in one case while also serving a jail sentence or house arrest in another case." *Martinez*, 2018 WL 4039405, at *6.

A panel of this court was not persuaded by this argument, finding that Martinez' "interpretation directly conflicts with the purpose of post-imprisonment supervision and the requirements of post-imprisonment supervision as provided in K.S.A. 2017 Supp. 8-1567(b)(3)." 2018 WL 4039405, at *6.

"When the statute is read as a whole, it is clear that the Legislature intended the period of post-imprisonment supervision to be served after the terms of imprisonment were served in all consecutive sentences. After all of the jail time is served, the purpose of placing the offender in the community under post-imprisonment supervision then can be realized." 2018 WL 4039405, at *6.

The legal analysis in *Martinez* is consistent with the analysis we set forth above. Using that analysis, we conclude the district court's order imposing the mandatory one-year period of postimprisonment supervision—to be completed once Baska was released from the Residential Center—properly conforms to the provisions of K.S.A. 2015 Supp.

8-1567(b)(3). The order did not delay the start of Baska's period of postimprisonment supervision period but instead directed it to begin upon expiration of Baska's term of imprisonment, which in this case was contemplated to be the probation sentence he would be serving under the supervision of community corrections at the Therapeutic Community and the Residential Center.

2. *The time period after the Residential Center and before the arrest warrant*

As an alternative claim, Baska argues he was released from imprisonment on December 28, 2018, the day he was arrested on his probation violations in the misdemeanor cases and taken from the Residential Center to jail. Baska claims the district court erred in failing to give him jail credit towards his postimprisonment supervision period from December 28, 2018, to May 29, 2019, when the arrest warrant for his most recent probation violations was issued. Baska argues that without that credit, the order requiring him to serve the 356 days left on his postimprisonment supervision in jail is illegal.

In support of his claim, Baska relies on the new language added to K.S.A. 8-1567 as part of the 2018 amendments:

> "*If it is found the offender has violated the provisions of this supervision, the court shall determine whether the time from the issuing of the warrant to the date of the court's determination of an alleged violation, or any part of it, shall be counted as time served on supervision.* Any violation of the conditions of such supervision may subject such person to revocation of supervision and imprisonment in jail for the remainder of the period of imprisonment, the remainder of the supervision period, or any combination or portion thereof." (Emphasis added.) K.S.A. 2019 Supp. 8-1567(b)(3).

But as explained above, the 2018 amendments are not retroactive and do not apply to the claims presented on appeal. Even if the amendments were retroactive, the district

court never made a finding that Baska violated the conditions of postimprisonment supervision, and there is no evidence in the record to support a finding that Baska violated the conditions of his postimprisonment supervision. This is primarily because, as explained above and again below, Baska's period of postimprisonment supervision never started in the first place.

In further support of his argument, Baska hones in on the district court's sentencing order imposing the mandatory one-year period of postimprisonment supervision, which the parties agreed and the court ordered would begin when Baska was released from the Residential Center. Baska asserts that "[b]ased on the record, [he] was arrested while in the facility, bonded out, and never returned to the facility, so he was discharged from the facility on December 28, 2018." But under Baska's very broad definition of the term "release," his period of postimprisonment supervision would have started even if he had unlawfully absconded from the Residential Center. In a strict, literal sense, the Johnson County Department of Corrections had to "release" Baska to law enforcement on December 28, 2018, when law enforcement came to the Residential Center to arrest Baska for his probation violations and take him to jail. But to deem Baska to have been "released" from the Residential Center for purposes of starting his postimprisonment supervision would misconstrue the court's purpose here: to comply with the statute that mandates Baska to start his postimprisonment supervision upon expiration of his term of imprisonment, which in this case was the probation sentence he was serving under the supervision of community corrections at the Therapeutic Community and the Residential Center.

Even more importantly, deeming Baska to have been released from the Residential Center at the time of his arrest on December 28, 2018, ignores the plain language of the statute requiring a felony DUI offender to begin serving the period of postimprisonment supervision upon release from imprisonment. Baska was not released from the Residential Center to a postimprisonment supervision program for participation in a

13

multidisciplinary model of services for substance use disorders. See K.S.A. 2015 Supp. 8-1567(b)(3). Baska was arrested and taken to jail for allegedly violating the conditions of his probation. Baska bonded out of jail and was ordered by the court to confinement under house arrest pending a probation revocation hearing. Baska remained in custody and therefore imprisoned as defined by the DUI statute, during the time period he was confined to house arrest.

> "'[C]ustody contemplates an intent on the part of prison officials to exercise actual or constructive control of the prisoner and that in some manner the prisoner's liberty is restrained. There is no requirement that the prisoner be constantly supervised or watched over by prison officials. The key factor is that prison officials have not evidenced an intent to abandon or give up their prisoner, leaving him [or her] free to go on his [or her] way.' [Citations omitted.]" *State v. Kraft*, 38 Kan. App. 2d 215, 220, 163 P.3d 361 (2007) (quoting *State v. Pritchett*, 222 Kan. 719, 720, 567 P.2d 886 [1977]).

In *Kraft*, 38 Kan. App. 2d at 220-23, this court applied this sound reasoning to hold the defendant was still in "custody" after he left the Residential Center and was placed on house arrest.

In this case, Baska went from being in the custody and control of the Johnson County Department of Corrections at the Residential Center, to being in the custody and control of law enforcement at the jail, to being in the custody and control of court services when he bonded out to house arrest. As defined by K.S.A. 2015 Supp. 8-1567(o)(2), Baska remained imprisoned—bonded out on house arrest and in the custody and control of court services—from the time he left the Residential Center until his probation was revoked in the misdemeanor cases on May 30, 2019. At no time was he released from imprisonment.

3. *Risk assessment tool*

As a second alternative claim, Baska argues the order of postimprisonment supervision was an illegal sentence because the court failed to comply with the requirement in K.S.A. 2015 Supp. 8-1567 that the court use a risk assessment tool to determine whether the felony DUI offender should be supervised by community correctional services or court services.

> "The court shall determine whether the offender, upon release from imprisonment, shall be supervised by community correctional services or court services based upon the risk and needs of the offender. The risk and needs of the offender shall be determined by use of a risk assessment tool specified by the Kansas sentencing commission." K.S.A. 2015 Supp. 8-1567(b)(3).

But the record reflects that the district court *did* use a risk assessment tool as required by the statute. The transcript from the November 3, 2017 plea hearing reflects that the district court ordered a Level of Service Inventory-Revised (LSI-R) be conducted:

> "THE COURT:  Count III is dismissed. Sentencing will be continued. A presentence investigation is ordered. Are you a Kansas resident?
> "THE DEFENDANT:  Yes, Your Honor.
> "*THE COURT: I will also order an LSI-R.*" (Emphasis added.)

And the case docket sheet similarly reflects that the district court ordered a LSI-R at the November 3, 2017 plea hearing:

> "11/03/17   . . . JURY TRIAL WAIVED BY DEFENDANT, PLEA NO CONTEST, FINDING GUILTY, PRESENTENCE INVESTIGATION ORDERED, CONTINUED BY DEFENSE, DEFENDANT ORDERED TO PERSONALLY APPEAR AT NEXT COURT HEARING, *COMMENT LSIR ORDERED*." (Emphasis added.)

15

Notably, the December 29, 2017 presentence investigation report suggested that the LSI-R assessment was completed: The investigator recommended that the district court follow the recommendations of the LSI-R assessment and have Baska comply with the LSI-R case plan. And on January 3, 2018, the court issued orders of misdemeanor probation and postimprisonment supervision in which it specifically ordered Baska to comply with the LSI-R case plan with Johnson County Community Corrections.

The district court complied with the statutory provision requiring it to use a risk assessment tool to determine that Baska should be supervised by community correctional services; therefore, there is no merit to Baska's claim that the court's order of postimprisonment supervision was an illegal sentence.

4. *Starting postimprisonment supervision*

As a third and final alternative claim, Baska argues his postimprisonment supervision period never actually began because he never successfully completed his treatment at the Residential Center. Because a felony DUI offender must be on postimprisonment supervision for any part of it to be converted to a jail sentence, Baska asserts the district court's order does not conform to K.S.A. 2015 Supp. 8-1567(b)(3).

We find Baska's claim has merit, although not because of his failure to successfully complete treatment at the Residential Center. The issue here is a statutory one, plain and simple. Under K.S.A. 2015 Supp. 8-1567(b)(3), a felony DUI offender will be placed on the one-year mandatory period of supervision only "[a]fter the term of imprisonment imposed by the court" or "upon release from imprisonment" or upon "expiration of the term of imprisonment." So, the issue is whether Baska remained imprisoned from January 3, 2018, the day he was sentenced, to May 30, 2019, the day his probation was revoked in the misdemeanor cases. The record reflects that he was.

16

On January 3, 2018, the district court sentenced Baska in the two misdemeanor cases to 18 months in jail but granted him 24 months' probation under the supervision of community corrections. Specifically, the court ordered the initial probation placement to be served at the Therapeutic Community within the Residential Center with Baska to transition to the Residential Center when he was released from the Therapeutic Community. The court ordered that Baska wear a remote breathing unit for 90 days after release from the Residential Center.

Baska spent the first seven days after sentencing in jail waiting for a bed to open up at the Therapeutic Community. While in jail, he was under the control and in the custody of law enforcement. Baska spent the next 12 months at the Therapeutic Community and the Residential Center under the custody and control of community corrections. Almost 12 months into the 24-month probation period, Baska was arrested at the Residential Center, taken to the jail, and then released on bond to house arrest. With the exception of two additional arrests for bond violations, he remained on bond under house arrest until May 29, 2019, when he was taken into custody on an arrest warrant for violating the terms and conditions of his probation. He was under the custody and control of law enforcement for the days he spent in jail on bond violations, and he was under the custody and control of court services when he was on bond under house arrest. His probation was revoked on May 30, 2019, and he was ordered to serve his underlying 18-month sentence, with credit for time spent in jail before he originally was sentenced. Baska was imprisoned, as that word is defined in the applicable statute, during the entire time period from January 3, 2018, through May 30, 2019. See K.S.A. 2015 Supp. 8-1567(o)(2). At no point during that time period was he released from the term of imprisonment imposed by the district court. Accordingly, Baska's one-year mandatory period of postimprisonment supervision never began. Because it never began, the court could not have found Baska to have violated the conditions of the supervision and, in turn, could not have subjected Baska to revocation of supervision and imprisonment in jail for the remainder of the supervision period. K.S.A. 2015 Supp. 8-1567(b)(3).

17

For all of these reasons, we conclude the district court's order finding Baska violated the conditions of supervision, revoking Baska's supervision, and ordering Baska to serve the remaining period of supervision in jail does not conform to K.S.A. 2015 Supp. 8-1567(b)(3). We reverse the district court's order revoking supervision and requiring Baska to serve the remaining period of postimprisonment supervision in jail. We remand the matter with directions for the court to decide whether Baska is otherwise subject to imprisonment and, if not, to impose the mandatory one-year period of postimprisonment supervision as originally ordered.

Reversed and remanded with directions.

\* \* \*

ATCHESON, J., dissenting: Having been convicted as a repeat drunk driver, Defendant Michael L. Baska was required to complete a period of postimprisonment supervision immediately after satisfying a term of incarceration, all as mandated in K.S.A. 2015 Supp. 8-1567. During that one-year supervision, offenders like Baska must be closely monitored and participate in substance abuse treatment—legislative directives aimed at preventing further drunk driving incidents and promoting public safety on the state's roadways. If offenders fail to comply with the conditions of the supervision, a district court can order them reincarcerated for the balance of the one-year period.

The Johnson County District Court ordered Baska jailed after he violated the terms of his probation on other convictions and erroneously tacked on the bulk of the supervision period. But based on the governing statutory language in K.S.A. 2015 Supp. 8-1567(b)(3), Baska actually had been on postimprisonment supervision for at least 360 days and likely the full year. The district court, therefore, could not have ordered Baska incarcerated for that time. I respectfully dissent from the majority's decision finding

18

otherwise and remanding to the district court to determine if Baska may be required to yet spend a year on postimprisonment supervision.

In short, I would find Baska's first point on appeal, as outlined in the majority opinion, to be well-taken. His other points entail lesser relief or doubtful arguments, and I offer no assessment of them.

The proper legal resolution of this case on appeal is comparatively straightforward and requires no more than the application of that part of K.S.A. 2015 Supp. 8-1567(b)(3) outlining postimprisonment supervision for defendants with three or more DUI convictions. Baska had at least three earlier DUI convictions, so this one constituted a felony.

As best I can tell, the matter of Baska's postimprisonment supervision got fouled up in the district court for two primary reasons. First, Baska also accumulated a series of misdemeanor charges and convictions, and in some of those cases he was placed on probation with conditions that mirrored much of what he was supposed to do on postimprisonment supervision for this DUI conviction. Baska also racked up probation violations with various sanctions that made it hard to tell whether he was coming or going.

Second, in this case, the prosecutor and Baska's lawyer informed the district court they had agreed that the one-year postimprisonment supervision would not begin until after Baska was released from custody on his prison sentence and went through both the Residential Center, a highly structured nonprison program, and the Therapeutic Community, an intensive substance abuse treatment program. The district court followed that agreement. But the arrangement directly conflicted with K.S.A. 2015 Supp. 8-1567(b)(3), making the agreement and the district court's adoption of it an illegal

19

sentence. Parties cannot agree to illegal sentences. See *State v. Lehman*, 308 Kan. 1089, Syl. ¶ 1, 427 P.3d 840 (2018).

So the district court sentenced Baska to a 12-month term of imprisonment on the DUI conviction on January 3, 2018. Because Baska had been in jail as a pretrial detainee for more than a year, the district court credited that time against the DUI sentence and properly found he had effectively served the sentence. As I explain shortly, under K.S.A. 2015 Supp. 8-1567(b)(3), the one-year postimprisonment supervision began then, notwithstanding the contrary (and unenforceable) agreement otherwise. The appellate record shows that Baska spent six months at the Therapeutic Community, completing treatment there, and then went to the Residential Center. On December 28, he was arrested on a warrant for a probation violation and taken to jail. Baska bonded out of jail several days later. Over the next 5 months, Baska was on house arrest for some period, cited for several bond violations, and was twice jailed for a total of 15 days before being released.

Ultimately, the State sought to revoke Baska's postimprisonment supervision on this DUI conviction and his probation on the other convictions based on his misconduct in April and May 2019. During the revocation hearing at the end of May, Baska admitted the violations. The district court ordered Baska to serve the underlying sentences on the other convictions plus 356 days it determined he had yet to spend on postimprisonment supervision on the DUI conviction. In coming to that conclusion, the district court plainly did not count as part of the one-year supervision period the time Baska spent at the Therapeutic Community and the Residential Center between January 3 and December 28, 2018. And that's a legal error.

The resolution of the point depends upon the proper application of K.S.A. 2015 Supp. 8-1567(b)(3) to Baska's DUI conviction. An issue resting on statutory construction presents a question of law that we address without deference to the district court. *State v.*

20

*Turner*, 293 Kan. 1085, 1086, 272 P.3d 19 (2012). The majority says the statute in effect when Baska committed the DUI governs, although the parties have relied on the more recent version in their briefs. I suppose the majority is correct, so I do not consider the 2018 amendments to K.S.A. 8-1567(b)(3). But I would come to the same conclusion under either version.

The Legislature added subsection (b)(3) as an entirely new component of K.S.A. 8-1567 in 2011 and amended the statute in a number of other ways. As I have indicated, subsection (b)(3) requires that a defendant convicted of a third (or greater) DUI transition from serving a sentence of incarceration in jail or prison to a one-year period of supervision during which he or she must "participate in a multidisciplinary model of services for substance use disorders." K.S.A. 2015 Supp. 8-1567(b)(3). Pertinent here, I extract several parts of the lengthy subsection describing the incarceration, the supervision period, and their relationship:

• "The court shall determine whether the offender, upon release from imprisonment, shall be supervised by community correctional services or court services based upon the risk and needs of the offender." This language requires supervision and presents the district court with options in selecting the supervising agency.

• "The law enforcement agency maintaining custody and control of a defendant for imprisonment . . . upon expiration of the term of imprisonment shall deliver the defendant to a location designated by the supervision office designated by the court." This language requires defendants go from the agency having custody of them while they serve a term of incarceration as punishment for the DUI to a place the agency overseeing the postimprisonment supervision has determined. There is to be a seamless (and immediate) transition from incarceration to postimprisonment supervision.

• "After the term of imprisonment imposed by the court, the person shall be placed on supervision to community correctional services or court services . . . for a mandatory one-year period of supervision." Nothing in this language suggests the supervision period may be deferred once the defendant has served the punitive term of incarceration.

• "During such supervision, the person shall be required to participate in a multidisciplinary model of services for substance use disorders . . . and, if appropriate, referral to a community based substance use disorder treatment." The one-year supervision must include appropriate drug and alcohol counseling and treatment. This further suggests the supervision period is to immediately follow the defendant's release from the punitive incarceration, since delaying the supervision and the treatment would undercut the subsection's obvious policy objectives.

• "Any violation of the conditions of such supervision may subject such person to revocation of supervision and imprisonment in jail for the remainder of the period of imprisonment, the remainder of the supervision period, or any combination or portion thereof." This creates a punitive sanction for a violation of the conditions of supervision.

As those provisions also illustrate, the Legislature clearly distinguished "imprisonment" and "term of imprisonment," on the one hand, from the period of supervision and the requisite substance abuse treatment on the other. In subsection (b)(3), imprisonment refers to the defendant's actual confinement in a penal facility, i.e., a county jail or a state prison. Equally clearly, a defendant is to transition immediately from incarceration to the one-year supervision period. During the supervision period, under the continuing guidance of either community corrections or court services, the defendant must participate in a treatment program. A district court has no discretion to dispense with or modify the supervision period. K.S.A. 2015 Supp. 8-1567(b)(3) ("period of supervision shall not be reduced"). Likewise, the requirement for community corrections placement or court services monitoring intertwined with the requirement for substance

22

abuse treatment during the supervision period are all statutorily described with a mandatory "shall." See *Gannon v. State*, 298 Kan. 1107, 1141, 319 P.3d 1196 (2014) (when used in "legal document[s]," term "shall" ordinarily construed as mandatory).

The statutory mandates in K.S.A. 2015 Supp. 8-1567(b)(3) are unmistakable, given the Legislature's language outlining them. Our task is to give effect to the legislative intent animating a statute. *State v. Looney*, 299 Kan. 903, 906, 327 P.3d 425 (2014). And in discerning that intent, we typically should rely on the plain meaning of the words the Legislature has used. *State v. O'Connor*, 299 Kan. 819, 822, 326 P.3d 1064 (2014). This is such a case.

The district court erred in delaying the start of Baska's one-year supervision period after determining he had served the term of imprisonment for his DUI conviction, crediting the time he spent in jail as a pretrial detainee. The supervision period necessarily began when Baska completed the incarceration portion of his sentence. Ironically, the district court compounded the error by delaying the period while Baska was under community corrections supervision in the Residential Center and participating in a community based treatment program at the Therapeutic Community—the very conditions that are mandatory components of the period. So the district court impermissibly deferred the one-year period and ordered Baska to do exactly what he was otherwise supposed to do during the period. Although the district court may have been led astray by the parties' joint request, that doesn't excuse an otherwise illegal sentence.

The majority relies on two ineffective rejoinders to affirm the district court. First, the majority points to the definition of "imprisonment" in K.S.A. 2015 Supp. 8-1567(o)(2) that includes "any restrained environment in which the court and law enforcement agency intend to retain custody and control of a defendant." The majority concludes that definition governs the insular supervision and treatment regimen the Legislature created in K.S.A. 2015 Supp. 8-1567(b)(3), so Baska's drug treatment at the

Therapeutic Community and his supervision through the Residential Center actually constitute imprisonment that postponed the start of the one-year supervision period. But that reading of the statute deviates from two canons of construction and does so with perilous results.

A specific statutory provision controls over a more general provision. *State v. Carpenter*, 310 Kan. 945, 949, 453 P.3d 865 (2019) (specific section within statute controls over general section in same statute); *Merryfield v. Sullivan*, 301 Kan. 397, 398, 343 P.3d 515 (2015) (specific statute controls over general statute). Here, K.S.A. 2015 Supp. 8-1567(b)(3) is the more specific, since it creates and outlines the purpose and concept of postimprisonment supervision. And, as I have explained, that subsection clearly differentiates imprisonment meaning incarceration in jail or prison, from participation in community corrections and substance abuse treatment during the one-year supervision period.

Although the general definition in K.S.A. 2015 Supp. 8-1567(o)(2) may be used for all kinds of other purposes, it cannot be imported into K.S.A. 2015 Supp. 8-1567(b)(3) to blur the legislatively crafted distinction between imprisonment and postimprisonment supervision in that subsection. To do otherwise, as the majority would, disassociates community corrections and substance abuse treatment from the mandated supervision period when they are supposed to be integrated components of a single mode of fairly coercive rehabilitation.[*]

[*]For example, if Baska's only crime of conviction were the DUI, the district court would have had no readily available coercive remedy for his failure to meaningfully engage in drug treatment the way it handled the one-year supervision period. Under the district court's order, Baska had completed his prison sentence, so he could not have been required to serve some remaining portion of it. But he had not yet started the one-year supervision period in K.S.A. 2015 Supp. 8-1567(b)(3), so he couldn't have been jailed for violating the terms of the supervision. Properly applied, however, K.S.A. 2015 Supp. 8-1567(b)(3) makes substance abuse treatment a mandated condition of supervision, and a district court may order a defendant to jail for the remainder of the supervision period for

noncompliance. That punitive stick has been lost here with no especially efficacious substitute.

A second canon of construction directs that a newer legislative enactment should control over an older one ostensibly addressing the same or similar subject matter. See *Jones v. Continental Can Co.*, 260 Kan. 547, 556, 920 P.2d 939 (1996); *State v. Sexton*, 232 Kan. 539, 543, 657 P.2d 43 (1983). Although less commonly cited than the specific-general canon and perhaps of less force, the rule is apt here. The general definition of imprisonment in subsection (o)(2) predated the enactment of subsection (b)(3), so it should yield rather than override.

The Legislature adopted K.S.A. 2015 Supp. 8-1567(b)(3) as a detailed, self-contained scheme to rehabilitate repeat DUI offenders. To reiterate, the Legislature plainly refers to imprisonment and term of imprisonment as the time the defendant spends in a jail or prison serving a sentence of incarceration, thereby differentiating less restrictive forms of confinement like community corrections and intensive substance abuse treatment. Given the carefully tailored and internally complete plan for postimprisonment supervision in K.S.A. 2015 Supp. 8-1567(b)(3), the Legislature had no need to modify the existing general definition of imprisonment in subsection (o)(2), since it has no direct bearing on the operation of postimprisonment supervision.

In short, the majority errs by superimposing the general definition in subsection (o)(2) on the specific rehabilitative scheme detailed in subsection (b)(3), when it doesn't obviously fit with the statutory language and impedes the purpose of that scheme.

Finally, the majority relies on *State v. Martinez*, No. 117,875, 2018 WL 4039405, at *6 (Kan. App. 2018) (unpublished opinion), but the opinion is inapposite. In that case, Martinez sequentially committed four felony DUIs and received consecutive sentences that included imprisonment—actual time behind bars in jail or prison—followed by

25

postimprisonment supervision under K.S.A. 2015 Supp. 8-1567(b)(3). Martinez argued that because the sentences were consecutive, she actually completed her postimprisonment supervision on one conviction while she served the incarceration portion of the sentence in the next case. This court rejected that argument as inconsistent with the purpose of postimprisonment supervision as a tool for rehabilitation built on substance abuse treatment and close monitoring in a community setting. 2018 WL 4039405, at *6. The court held that a defendant serving consecutive sentences would have to complete the terms of imprisonment on each of those sentences before starting postimprisonment supervision. But the court concluded the statutory scheme neither called for nor permitted aggregating postimprisonment supervision periods from consecutive DUI sentences. So a defendant would be required to serve a single one-year period of postimprisonment supervision after serving all of the consecutive terms of incarceration. 2018 WL 4039405, at *5-6.

Nothing in *Martinez* supports the district court's decision in this case to sever the community corrections and substance abuse treatment components of postincarceration supervision from the period of supervision itself. And nothing in *Martinez* suggests that a placement in either community corrections or substance abuse treatment constitutes part of a term of imprisonment under K.S.A. 2015 Supp. 8-1567(b)(3), thereby delaying the start of the supervision period. While *Martinez* may advance entirely reasonable readings of how postimprisonment supervision should operate in certain circumstances, those circumstances are not the circumstances of this case. So those readings are neither directly relevant nor even analogous here.

The proper remedy for Baska would necessarily require crediting the time he spent between January 3 and December 28 in treatment at the Therapeutic Community and then being monitored through the Residential Center as part of the one-year postimprisonment supervision period in K.S.A. 2015 Supp. 8-1567(b)(3). That's because the time immediately followed his imprisonment on the DUI conviction and entailed precisely the

26

sort of activity mandated during the postimprisonment supervision. The district court could not, therefore, properly order that he serve the time in jail based on a revocation of postimprisonment supervision. Assuming Baska should be credited with the partial days of January 3 and December 28, 2018, the time he spent at the Therapeutic Community and the Residential Center is five days short of a full year. Were I deciding this case, I would be inclined to invite the parties to address whether we have a sufficient appellate record to determine if Baska completed the supervision period after he was released on bond on December 31. And if so, what that determination should be, and if not, whether a remand to the district court would be in order.